UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LISA KRAUSE,

                              Plaintiff,

          -against-                                              6:17-CV-1045 (LEK/ATB)

GREG KELEHAN, Superintendent,
Oriskany Central School District, *et al.*,

                              Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Lisa Krause brings this action against Oriskany Central School District ("School

District"), Oriskany Central School District Board of Education ("Board"), Greg Kelahan, the

School District's superintendent, and various members of the Board. Dkt. No. 8 ("Complaint").

Plaintiff alleges that Defendants discriminated and retaliated against her in violation of the

United States Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,

New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 290 *et seq.*, and state tort law.

Id. The School District and the Board (together, the "Municipal Defendants") moved for

judgment on the pleadings. Dkt. Nos. 16 ("Municipal Defendants' Motion"), 16-6 ("Municipal

Defendants' Memorandum"). Kelahan, Board President Carl Grazadei, Board Vice President

Shirley Burtch, and current and former Board members Michelle Anderson, Robin Appler,

Therese Hanna, Adam Kernan, Amy Mayo, Tad Beaver, Charles Courtney, Patrick Hoehn,

Donald Rothdeiner, and Mike Davis (together, the "Individual Defendants") moved to dismiss

the Complaint. Dkt. Nos. 43 ("Individual Defendants' Motion"), 43-2 ("Individual Defendants'

Memorandum"). Plaintiff also moves to amend her Complaint. Dkt. Nos. 22 ("Amendment

Motion"), 22-2 ("PAC").[1] For the reasons that follow, Defendants' Motions are granted in part,

and the Amendment Motion is granted.[2]

## II.    BACKGROUND

### A.  Factual History

Plaintiff is a female who was employed as a principal by the School District from

December 2014 until October 19, 2016. PAC ¶¶ 1, 9. Plaintiff alleges that, during her

employment, Kelahan "subjected [her] to excessive scrutiny" by "visiting [her]

building . . . almost daily," criticizing her, and "comment[ing] on [her] role as a mother . . . and

claim[ing] her family was a 'distraction.'" Id. ¶ 9. She further alleges that Kelahan falsely told

Plaintiff's "secretary that [Plaintiff] 'wanted to fire her.'" Id. ¶ 11. Kelahan also provided

Plaintiff with irregular, "often incomplete" performance evaluations. Id. ¶ 13. During these

evaluations, Plaintiff would attempt to defend her performance, but Kelahan would "abruptly

terminate[]" the meeting and yell at Plaintiff. Id. Also, Kelahan once told her, "That's why I hate

working with women, they're always so emotional." Id.

---

[1]  Municipal Defendants' reply brief responds to the PAC as if it were "the operative pleading" and opposes the Amendment Motion on futility grounds. Dkt. No. 41 ("Municipal Defendants' Reply") at 1 & n.3. The Individual Defendants do not object to or respond to the PAC. Individual Defs.' Mem. Therefore, the Court will consider Defendants' arguments in light of the PAC.

[2]  In Plaintiff's Complaint and PAC, the spelling of Kelahan's last name alternates between "Kelehan" and "Kelahan." Defendants' briefs consistently spell his last name "Kelahan," and the Municipal Defendants state that Plaintiff misspelled his name. Municipal Defs.' Reply at 1 n.1. Accordingly, the Court will refer to this defendant as "Kelahan," and encourages Plaintiff's counsel to practice greater diligence in future filings. The Court also instructs the Clerk of the Court to amend the caption of this case to reflect the correct spelling of Kelahan.

Plaintiff alleges that Kelahan recommended Plaintiff's termination to the Board, and the Board adopted this recommendation and terminated her employment on October 19, 2016. Id. ¶ 3. Plaintiff alleges that "Kelahan falsely manufactured and exaggerated bases for her termination in retaliation for the public revelation of his extraordinarily abusive and ineffectual interactions with her as reported to the Oriskany School Board." Id. ¶ 10. In this "public revelation," the Board learned that Kelahan threw a "paper stack" at Plaintiff, frequently shouted at her, and made her cry. Id.

### B. Procedural History

On February 16, 2017, Plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), and her complaint "was cross-filed with the New York State Division of Human Rights ["DHR"] pursuant to a work-share agreement." PAC ¶ 60. On August 23, 2017, Plaintiff brought this action against Defendants in Oneida County Supreme Court. Dkt. No. 1 ("Removal Notice") ¶ 1. Defendants removed the action to this Court on September 20, 2017. Id. ¶ 16. On October 27, 2017, Plaintiff filed her Complaint, which alleges that Defendants' treatment of her and the termination of her employment violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, the anti-discrimination and retaliation provisions of Title VII and the HRL, and state tort law. Compl. ¶¶ 27–69. The Municipal Defendants moved for judgment on the pleadings, Municipal Defs.' Mot., and the Individual Defendants moved to dismiss for failure to state a claim, Individual Defs.' Mot. Plaintiff opposed the Motions, Dkt. Nos. 22-3 ("Municipal Defendants' Response"), 45 ("Individual Defendants' Response"), and Defendants replied, Municipal Defs.' Reply, Dkt.

No. 46 ("Individual Defendants' Reply"). Plaintiff also moved to amend her Complaint. Am.

Mot.

## III.     LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as

true the factual allegations contained in a complaint and draw all inferences in favor of the

nonmoving party. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility,

however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard

Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S.

at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct

based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the

action is subject to dismissal. Id. at 678–79.

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical

to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of

Beverly Hills, 259 F.3d 12, 126 (2d Cir. 2001).

4

IV.    **DISCUSSION**

**A.  Claims against Shirley Burtch**

Plaintiff lists Shirley Burtch as a defendant in this action. PAC at 1. The Individual
Defendants state that Burtch is deceased, that Plaintiff has not served Burtch or her estate, and
that she has not made an effort to substitute Burtch's estate as a defendant. Individual Defs.'
Mem. at 2. Rule 4(m) of the Federal Rules of Civil Procedure provides that a plaintiff must serve
each defendant with process "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). If
a plaintiff fails to serve a defendant within this period, the Court "must dismiss the action
without prejudice against that defendant or order that service be made within a specified time."
Id. The Court can find no record that Plaintiff served Burtch. Docket.

While the Individual Defendants observe that Plaintiff failed to substitute Burtch's estate,
the Court declines to dismiss the claims against Burtch with prejudice. Rule 25(a) of the Federal
Rules of Civil Procedure provides that, upon the death of a party in an ongoing action, a "motion
for substitution may be made by any party or by the successors or representatives of the deceased
party. . . . Unless the motion for substitution is made not later than 90 days after the death is
suggested upon the record by service of a statement of the fact of the death . . . the action shall be
dismissed as to the deceased party." Fed. R. Civ. P. 25(a). "Courts routinely dismiss cases with
prejudice where there is a failure to comply with the time period specified by Rule 25(a)."
Mulvey v. Sonnenschein, Nath & Rosenthal LLP, No. 08-CV-1120, 2011 WL 5191320, at *1
(E.D.N.Y. Oct. 30, 2011). However, the 90-day period does not begin running until a party to the
action or "the successor or representative of the deceased" completes "formal service of a
suggestion of death." Stephens v. Am. Risk Mgmt., Inc., No. 89-CV-2999, 1995 WL 479438,

5

at *2 (S.D.N.Y. Aug. 14, 1995). "The suggestion of death filing . . . is not effective if made by counsel for the" deceased party. Id; accord Int'l Cablevision, Inc. v. Sykes, 172 F.R.D. 63, 67 (W.D.N.Y. 1997).

Here, because Burtch's counsel submitted an affidavit stating that she is deceased, Dkt. No. 43-1 ("Spagnoli Affidavit") ¶ 2, the suggestion of death filing was ineffective. Therefore, the Court dismisses the claims against Burtch without prejudice for failure of service, but will not dismiss the claims with prejudice for failure to substitute a party.

### B. Title VII Claims

Plaintiff alleges Title VII gender discrimination, hostile work environment, and retaliation claims against Defendants. PAC ¶¶ 59–69. The Individual Defendants argue that the Title VII claims against them should be dismissed because Title VII does not provide for liability against individuals. Individual Defs.' Mem. at 7. The Municipal Defendants argue that Plaintiff's gender discrimination and hostile work environment claims are partially barred because she failed to file a timely complaint with the EEOC, and that she fails to state a retaliation claim.[3] Municipal Defs.' Mem. at 13–15; Municipal Defs.' Reply at 12–15. The Court addresses these arguments below.

---

[3] The Municipal Defendants argued in their Memorandum that Plaintiff's Title VII claims should be dismissed as untimely because the Complaint failed to allege that she brought this action within ninety days of receiving a right to sue letter from the United States Department of Justice. Municipal Defs.' Mem. at 14 (citing 42 U.S.C. § 2000e-5(f)(1)). However, the PAC clarifies that Plaintiff received her right to sue letter on May 25, 2017. PAC ¶ 61. Plaintiff filed suit in the Oneida County Supreme Court on August 23, 2017—exactly ninety days later. Removal Notice ¶ 1. Because the PAC resolves the timeliness issue, and the Court is evaluating Defendants' Motions in light of the PAC, the Court does not consider this argument in support of the Municipal Defendants' Motion.

### 1. *Claims Against the Individual Defendants*

"There is no individual liability under Title VII." Gomez v. N.Y.C. Police Dep't, 191 F.

Supp. 3d 293, 302 (S.D.N.Y. 2016) (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d

Cir. 1995)). Therefore, the Court grants the Individual Defendants' Motion with respect to the

Title VII claims that Plaintiff alleges against them.

### 2. *Timeliness*

A plaintiff bringing a Title VII claim in New York must file a complaint with the EEOC

within three hundred days of the date on which the "alleged unlawful employment practice

occurred." 42 U.S.C. § 2000e-5(e)(1); see Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307

(2d Cir. 1996) (stating that, because New York "has both antidiscrimination laws and an

antidiscrimination agency," "the time period for filing claims with the EEOC is . . . 300 days")

(internal citations and quotation marks omitted). Plaintiff filed her grievance with the EEOC on

February 16, 2017. PAC ¶ 60. The Municipal Defendants correctly observe that allegations of

conduct occurring before April 22, 2016 fall outside the 300-day limitations period. Municipal

Defs.' Mem. at 13.

"When, as in this case, a plaintiff's allegations of discrimination extend beyond the

300-day limitations period, the nature of the claim determines what consideration will be given to

the earlier conduct." Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004). For instance, the

continuing violation doctrine provides that "if a plaintiff has experienced a continuous practice

and policy of discrimination . . . the commencement of the statute of limitations period may be

delayed until the last discriminatory act in furtherance of it." Washington v. County of Rockland,

373 F.3d 310, 317 (2d Cir. 2004) (internal citations and quotation marks omitted). However, "[i]t

7

is well-settled that certain adverse employment practices such as termination . . . are discrete acts and cannot be considered as part of an ongoing pattern or policy of discrimination." <u>Robles v. Cox and Co., Inc.</u>, 841 F. Supp. 2d 615, 628 (E.D.N.Y. 2012) (citing <u>Mix v. Del. & Hudson Ry. Co.</u>, 345 F.3d 82, 89 (2d Cir. 2003)). With these principles in mind, the Court turns to Plaintiff's disparate treatment and hostile work environment claims.

### 3. *Discrimination*

"Title VII . . . requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 85 (2d Cir. 2015). The first element is satisfied if the defendant "tak[es] an adverse employment action against" the plaintiff." <u>Id.</u> A plaintiff satisfies the second element by alleging facts that "suggest[] an inference of discriminatory motivation." <u>Id.</u> at 87 (quoting <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 310 (2d Cir. 2015)).

Plaintiff alleges that Kelahan regularly "undermined [her] authority," yelled at her, and subjected her to excessive scrutiny. PAC ¶¶ 9–11. She then states that Kelahan told her that her family was a "distraction" and once said, "That's why I hate working with women, they're always so emotional." <u>Id.</u> ¶¶ 9, 13. She further alleges that "Defendants negligently and/or with reckless disregard to Plaintiff's rights acted both individually and in concert to facilitate the termination of the Plaintiff knowing same was contrived, unwarranted, and without lawful basis. On information and belief, the Board did not allow such actions toward male employees." <u>Id.</u> ¶ 12.

The Municipal Defendants observe that the only timely "adverse employment action Plaintiff identifies . . . is her termination in October, 2016," and that "[h]er discrimination claim should be dismissed to the extent it pertains to any other alleged act." Municipal Defs.' Mem. at 13–14. The Court agrees that any alleged adverse employment actions other than Plaintiff's termination cannot be considered in support of her discrimination claim. However, this argument is irrelevant because Plaintiff does not appear to have alleged any other adverse employment actions.

The Municipal Defendants do not argue that Kelahan's conduct was not motivated by gender animus. Instead, they argue that Plaintiff "nowhere alleges nonconclusory facts to show the District or the Board was motivated by gender animus in approving her termination." Municipal Defs.' Mem. at 15. However, this argument ignores Title VII precedent, under which "a defendant institution" may be liable for the discriminatory conduct of a supervisor who "recommend[s] and thus influenc[e]s the adverse action by a non-biased decision-maker." Doe v. Columbia Univ., 831 F.3d 46, 58–59 (2d Cir. 2016); see Holcomb v. Iona Coll., 521 F.3d 130, 143 (2d Cir. 2008) (stating that a plaintiff is "entitled to succeed, even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the . . . process") (quoting Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999)).[4]

---

[4] Courts have dubbed this the "cat's paw" theory of liability, referring to a fable in which a monkey, through flattery, persuades a cat to retrieve chestnuts from a fire. Staub v. Proctor Hosp., 562 U.S. 411, 415 n.1 (2011). The cat burns its paws, and the monkey takes the chestnuts and leaves without giving the cat any reward in return. Id.

9

Plaintiff alleges that Kelahan recommended that the Board terminate her employment using false and exaggerated information, and that the Board adopted this recommendation. PAC ¶¶ 3, 10, 13. Because the Municipal Defendants do not dispute that gender animus motivated Kelahan's conduct, the Court concludes that Plaintiff's allegations give rise to a plausible inference that Kelahan "played a meaningful role in the" Board's decision to terminate her employment. Holcomb, 521 F.3d at 143. Therefore, even though the Board members may have been unbiased, they terminated Plaintiff's employment based on a recommendation from what may have been a biased supervisor. Accordingly, Plaintiff's discrimination claims against the Municipal Defendants survive dismissal.

### 4. Hostile Work Environment

To establish a hostile work environment claim, a plaintiff must demonstrates that he was subjected to harassment that was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); accord Kaytor v. Elec. Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010). Moreover, the incidents giving rise to a hostile work environment must have "occur[ed] because of an employee's . . . protected characteristic, such as race or national origin." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)).

Like Plaintiff's discrimination claim, her hostile work environment claim is based largely on Kelahan's conduct during her employment. The Municipal Defendants argue that this "claim should be dismissed to the extent it pertains to any discrete act occurring prior to April 22, 2016." Municipal Defs.' Mem. at 14. Plaintiff invokes the continuing violation doctrine

and states that, because some of Kelahan's conduct giving rise to her hostile work environment claim occurred after April 22, "the entire period of the hostile work environment may be considered for purposes of determining liability." Municipal Defs.' Resp. at 15. The Court agrees with Plaintiff. She alleges that Kelahan visited and pestered her at "[her] building" on a near-daily basis. PAC ¶ 9. During these visits, Kelahan "would comment on Plaintiff's role as a mother . . . and claim her family was a 'distraction.'" Id. He also "undermined [Plaintiff's] authority on a regular basis" by, among other things, telling Plaintiff's "secretary that she 'wanted to fire her.'" Id. ¶ 11. Plaintiff describes this conduct as occurring persistently throughout her employment. Therefore, she plausibly alleges that this conduct occurred between April 22, 2016 and her October 2016 termination. Because some of Kelahan's alleged conduct giving rise to the hostile work environment claim is timely, the continuing violation doctrine applies and Plaintiff's allegations of Kelahan's pre-April 22, 2016 conduct is timely. See Benbow v. State Univ. of N.Y.-New Paltz, No. 11-CV-870, 2014 WL 1871863, at *7 (N.D.N.Y. May 8, 2014) (Kahn, J.) (finding that the plaintiff raising a hostile work environment claim "plausibly [alleged] a continuing violation" where "the large majority" of the acts giving rise to the claim "were perpetrated by a single actor" and "much of this conduct was frequent and repeated"); Slinkosky v. Buffalo Sewer Auth., No. 97-CV-677, 2000 WL 914118, at *5 (W.D.N.Y. June 29, 2000) (applying the continuing violation doctrine because "the alleged harassment appears to have regularly and continually taken place since 1987 with no significant interruption in time as to break the asserted continuum of discrimination") (quotation marks omitted).

The Municipal Defendants do not raise a robust challenge to the substance of the hostile

work environment claim. They do not argue, for instance, that the conduct described above is

insufficiently "severe or pervasive" to support a hostile work environment claim. Perry, 115 F.3d

at 149. Instead, they only state that Kelahan's recommendation that the Board terminate Plaintiff

and the Board's adoption of that recommendation do not "support a Title VII hostile environment

claim, even if it is assumed they were prompted by gender bias." Municipal Defs.' Reply at 15.

By only considering these two actions, the Municipal Defendants incorrectly assume the

inapplicability of the continuing violation doctrine. Moreover, the Municipal Defendants'

conclusion, unsupported by analysis and raised for the first time in their Reply brief, is too

meager to support their Motion. Accordingly, the Court will not dismiss Plaintiff's hostile work

environment claims against the Municipal Defendants.

### 5. Title VII Retaliation

"To survive a motion to dismiss on [a] Title VII retaliation claim, [the plaintiff has] to

plead a prima facie case that (1) [she] participated in a protected activity, (2) the [employer]

knew of [her] participation, (3) [she] was subject to an adverse employment action, and (4) there

was a causal connection between participation in the protected activity and the adverse

employment action." Moy v. Perez, 712 F. App'x 38, 40 (2d Cir. 2017) (summary order) (citing

Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).

The Municipal Defendants argue that Plaintiff fails to allege that she engaged in a

protected activity, and that she fails to establish a causal connection between this activity and any

adverse employment action. Municipal Defs.' Mem. at 16. The Court agrees that Plaintiff fails to

allege that she engaged in a protected activity. "A protected activity is action that 'protests or

12

opposes statutorily prohibited discrimination.'" <u>Giscombe v. N.Y.C. Dep't of Educ.</u>, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) (quoting <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d Cir. 2000)). However, "[w]hen making the complaint, a plaintiff must do so in 'sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, or national origin.'" <u>Ellis v. Century 21 Dep't Stores</u>, 975 F. Supp. 2d 244, 280–81 (E.D.N.Y. 2013) (quoting <u>Brummell v. Webster Cent. Sch. Dist.</u>, No. 06-CV-6437, 2009 WL 232789, at *6 (W.D.N.Y. Jan. 29, 2009)).

Plaintiff's allegations in support of her retaliation claim are somewhat unclear. She alleges that the Board was privy to a "public revelation" that Kelahan threw papers at her, frequently shouted at her "for random and often petty matters," and made her cry. PAC ¶ 10. Because of the pleading's awkward, passive language, it is not even clear that Plaintiff was the person who provided this information to the Board. Furthermore, as the Municipal Defendants observe, Municipal Defs.' Mem. at 15, Plaintiff fails to raise a plausible inference that she complained to the Board that Kelahan's mistreatment was motivated by gender animus. The vague report to the Board only suggests that Kelahan was rude to Plaintiff and disliked her, not that he treated her in this manner because she is a woman. <u>See</u> <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998) (affirming dismissal of retaliation claim where the plaintiff's complaint to her employer did not "state that [she] viewed [her manager's] actions as based on her gender, and there was nothing in her protests that could reasonably have led [the employer] to understand that that was the nature of her objections"); <u>Int'l Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC</u>, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (dismissing retaliation claim at the summary judgment stage because the plaintiff "never

13

explicitly raised the issue of gender discrimination when she complained about her work").

Instead of alleging that she complained to the Board about Kelahan's gender discrimination, Plaintiff suggests that the Court should simply infer this fact, because it would be "remarkable" to "believe that Lisa Krause . . . only complained about facially neutral forms of harassment." Municipal Defs.' Resp. at 4. While the Court is required to "draw[] all reasonable inferences in . . . [P]laintiff's favor" when evaluating a motion to dismiss, <u>Allison v. Round Table Inv. Mgmt. Co., L.P.</u>, 447 F. App'x 274, 275 (2d Cir. 2012), the pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). Plaintiff's failure to allege that the complaint to the Board referenced Kelahan's gender bias is, therefore, fatal to her Title VII retaliation claim, and the claim is dismissed.

### C.  HRL Claims

Plaintiff also raises gender discrimination, hostile work environment, and retaliation claims under the HRL. PAC ¶¶ 27–35. The Municipal Defendants contend that Plaintiff is precluded from bringing an HRL claim in court because she "elect[ed] her remedy" by bringing an action before the DHR, Municipal Defs.' Mem. at 2, and because Plaintiff otherwise fails to state HRL hostile work environment and retaliation claims. The Individual Defendants argue that the claims against them should be dismissed because Plaintiff fails to plead that they "aided and abetted" any HRL violations committed by the Municipal Defendants. Individual Defs.' Mem. at 7–8. The Court addresses these arguments below.

14

### 1. Election of Remedies

New York Executive Law § 297(9) allows a complainant "aggrieved by an unlawful discriminatory practice" to bring an action "in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights." "Under the statute, administrative and judicial remedies are mutually exclusive and a party who files a complaint with the DHR is generally barred from commencing an action in court." Equal Emp't Opportunity Comm'n v. Rotary Corp., 164 F. Supp. 2d 306, 309 (N.D.N.Y. 2001). However, filing an EEOC complaint "to comply with the requirements of" Title VII does not qualify as "the filing of a complaint within the meaning of" the HRL. N.Y. Exec. Law § 297(9). Accordingly, a discrimination complaint filed with the EEOC that the EEOC then cross-files with DHR "is not deemed to be an election of administrative remedy." Melendez v. Int'l Serv. Sys., Inc., No. 97-CV-8051, 1999 WL 187071, at *13 (S.D.N.Y. Apr. 6, 1999) (quoting Teban v. Kingswood Mgmt. Corp., 633 N.Y.S.2d 6, 7 (App. Div. 1995)).

Plaintiff maintains that she did not elect an administrative remedy because she only filed an EEOC complaint, which was cross-filed with DHR "pursuant to the Work-Sharing agreement between" DHR and the EEOC. Municipal Defs.' Resp. at 2–3; PAC ¶ 60.[5] The Municipal Defendants maintain that "Plaintiff cannot credibly argue that the charge was filed with [DHR] only because there was a work-sharing agreement in place" because the caption of the complaint she filed in state court "expressly lists both the 'EQUAL EMPLOYMENT OPPORTUNITY COMMISSION' and the 'NEW YORK STATE DIVISION OF HUMAN RIGHTS.'" Municipal

---

[5] Under the work-sharing agreement between the EEOC and DHR, "charges filed with the EEOC are automatically considered dual-filed with" DHR. Nixon v. TWC Admin., LLC, No. 16-CY-6456, 2017 WL 4712420, at *3 (S.D.N.Y. Sept. 27, 2017) .

Defs.' Reply at 16 (citing Removal Notice at 5). This, the Municipal Defendants argue, suggests that Plaintiff deliberately brought this action before DHR, and thus elected an administrative remedy. Id.

While the Municipal Defendants' reasoning is not unsound, the Court is hesitant to dismiss Plaintiff's HRL claims based on nothing more than the caption of her state court complaint. It is possible, for instance, that Plaintiff's counsel listed both EEOC and DHR in the caption of the state court complaint simply to reflect the fact that EEOC automatically cross-filed her grievance with DHR. Drawing all reasonable inferences in Plaintiff's favor, as the Court is required to do at the motion to dismiss stage, Plaintiff has plausibly alleged that she did not deliberately bring this action before DHR and has not elected her remedy.

### 2. HRL Retaliation, Discrimination, and Hostile Work Environment Claims

#### a. Claims Against the Municipal Defendants

The Municipal Defendants argue that, even if Plaintiff did not elect her remedy, her HRL retaliation claim is defective because, like her Title VII retaliation claim, she fails to allege that she engaged in a protected activity. Municipal Defs.' Reply at 17. They also argue that her hostile work environment claim fails because there are no timely allegations of harassment, and that her discrimination claim fails for lack of allegations of wrongdoing by the Board members. Id. HRL retaliation, hostile work environment, and discrimination claims are analyzed largely identically to their Title VII counterparts. Hockeson v. N.Y. State Office of Gen. Servs., 188 F. Supp. 2d 215, 218–19 (N.D.N.Y. 2002) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714–15 & n.6 (2d Cir. 1996)). For the same reasons that the Court dismissed Plaintiff's Title VII retaliation claim, it dismisses her HRL retaliation claims against the Municipal Defendants.

As to Plaintiff's hostile work environment claim, the Court rejects the Municipal Defendants' timeliness challenge. The Municipal Defendants correctly observe, Municipal Defs.' Mem. at 7, that New York Education Law § 3813(1) requires a plaintiff bringing an action "against any school district, board of education . . ., or any officer of a school district [or] board of education" to serve a notice of claim upon the defendants within ninety days of the accrual of that claim. Plaintiff alleges that she served Defendants with a notice of claim on October 28, 2016. PAC ¶ 26. Therefore, her HRL claims must each have accrued by July 30, 2016, ninety days before October 28.

However, the Municipal Defendants incorrectly conclude that Plaintiff's hostile work environment claim failed to accrue by July 30, 2016. Municipal Defs.' Mem. at 9. As discussed in the Title VII hostile work environment section, Plaintiff alleges that Kelahan shouted at her and commented negatively on her role as a mother on a regular basis, which suggests that this conduct continued between July 30, 2016 and the termination of her employment on October 19, 2016. Moreover, "[t]he continuing violation exception also applies to claims under the HRL." Stathatos v. Gala Res., LLC, No. 06-CV-13138, 2010 WL 2024967, at *7 (S.D.N.Y. May 21, 2010) (citing Lee v. Overseas Shipholding Grp., Inc., No. 00-CV-9682, 2001 WL 849747, at *9 (S.D.N.Y. July 30, 2001)). As with Plaintiff's Title VII claims, the Court concludes that, because some of the allegations supporting Plaintiff's hostile work environment claim are timely, the entirety of her hostile work environment claim is timely. Because the Municipal Defendants raise no substantive challenge to the claim, the Court will not dismiss Plaintiff's HRL hostile work environment claims against the Municipal Defendants.

As to Plaintiff's discrimination claim, Municipal Defendants state in their Reply that this claim should be dismissed because of the "lack of allegations directly against the District and the Board." Municipal Defs.' Reply at 17. However, as stated above, because the parties apparently do not dispute that gender animus motivated Kelahan's mistreatment of Plaintiff, the Municipal Defendants can be held liable for discrimination based on the "cat's paw" theory of liability. Therefore, the Court denies the Municipal Defendants' Motion to dismiss the HRL discrimination claims against them.

### b. Claims Against the Individual Defendants

Unlike Title VII, the HRL provides for individual liability in limited circumstances. McNulty v. N.Y.C. Dep't of Fin., 941 F. Supp. 452, 458 (S.D.N.Y. 1996). The New York Court of Appeals, observing that the HRL prohibits discrimination by "employers" but fails to define the term, has "narrowed the class of individuals who could be considered liable as 'employers' to exclude those 'not shown to have any ownership interest or any power to do more than carry out the personnel decisions made by others.'" Id. at 459 (quoting Patrowich v. Chem. Bank, 473 N.E.2d 11, 12 (N.Y. 1984)). The HRL also provides that individuals can be held liable if they "aid, abet, incite, compel, or coerce the doing of" the employer's unlawful conduct. N.Y. Exec. Law § 296(6). Individuals aid and abet discriminatory conduct if they 'actually participate[] in the conduct giving rise to a discrimination claim.'" Bliss v. MXK Rest. Corp., 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016) (quoting Tomka, 66 F.3d at 1317).

First, the Individual Defendants argue that, because the HRL only permits individual liability if the plaintiff alleges facts indicating that the individual "aided and abetted" their employer's wrongful conduct, Plaintiff's claims against the Individual Defendants must be

18

dismissed if the claims against the Municipal Defendants are dismissed. Individual Defs.' Mem. at 7–8. Because the HRL hostile work environment and discrimination claims against the Municipal Defendants survive dismissal, this argument is unavailing.

Second, the Individual Defendants argue that, because Plaintiff only alleges wrongdoing by Kelahan, the HRL claims against the Individual Defendants must be dismissed. Id. at 8. To begin with, this proposition, even if true, would not warrant the dismissal of Plaintiff's HRL claims against Kelahan. As to the Board member defendants, Plaintiff never alleges which members voted for or against her termination. See PAC ¶ 3 (stating that Kelahan's recommendation "was adopted by the current . . . Board members," but not stating who the current board members are, whether every current Board member is a defendant in this action, or whether the vote was unanimous). Because of the lack of information presented, the Court cannot conclude that Plaintiff has alleged that the Board member defendants actually participated in her termination.

However, as stated above, an individual is an employer under the HRL, and thus can be held liable, if they have "any power to do more than carry out personnel decisions made by others." Patrowich, 473 N.E.2d at 12. Courts have suggested that a person who qualifies as an employer under this theory of HRL liability need not have actually participated in the discriminatory conduct to be held liable. See Evan-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP, 332 F. Supp. 2d 592, 597–98 (S.D.N.Y. 2004) (observing that an individual may be liable under the HRL "if that employee . . . has . . . the power to make, rather than carry out, personnel decisions or . . . actually participates in the conduct giving rise to the discrimination claim" (emphasis added) (citing Patrowich, 473 N.E.2d); Mills v. Miteq, Inc., No. 06-CV-752,

2007 WL 2908218, at *6 (E.D.N.Y. Sept. 14, 2007) (stating that "[n]umerous courts within the Second Circuit . . . allow a [HRL] claim to proceed against individual defendants who have participated in the alleged discriminatory conduct, *as well as* employers or those with the authority to hire and/or fire" (emphasis added)).

The Board members voted to terminate Plaintiff's employment. "[A]n individual who has significant supervisory authority, such as the power to hire and fire employees, can be held liable under the HRL." Heinemann v. Howe & Rusling, 260 F. Supp. 2d 592, 595 (W.D.N.Y. 2003) (quoting Cirillo v. Muss Dev. Co., 717 N.Y.S.2d 638 (App. Div. 2000)). Because the Board members had the power to fire Plaintiff, they had the power to do more than carry out the personnel decisions made by others, and can be held liable under the HRL regardless of whether they actually participated in discriminatory conduct. See Heinemann, 260 F. Supp. 2d at 594, 597 (finding that individual defendants on a committee who voted to terminate the plaintiff's employment could be held liable under the HRL because they "had extensive powers to make employment decisions affecting the plaintiff, including the power to fire her"). Accordingly, the Court will not dismiss Plaintiff's HRL discrimination and hostile work environment claims against the Board member defendants.

However, the Court will dismiss the HRL retaliation claims against the Individual Defendants for the same reason that it dismissed Plaintiff's Title VII retaliation claim. Furthermore, the Court will dismiss all of the HRL claims that Plaintiff raises against Mike Davis. Davis is listed in the PAC as "the representative of the 'ORISKANY ADMINISTRATOR'S UNION.'" PAC ¶ 6. Plaintiff does not allege that he had significant

20

supervisory authority, nor does she allege any facts suggesting that he aided and abetted any wrongdoing against Plaintiff. Accordingly, the HRL claims against him are dismissed.

### D. Constitutional Claims

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that Defendants retaliated and discriminated against her in violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. PAC ¶¶ 36–43. The Court evaluates these arguments below in light of Defendants' Motions.

#### 1. *Claims Against Mike Davis*

Plaintiff seeks relief against Mike Davis under § 1983, PAC ¶¶ 6, 37, 41, but states only that he is a union representative, id. ¶ 6. Plaintiff never alleges that he is a state actor. "In order to state a claim under Section 1983, [Plaintiff] must allege that [s]he was injured by either a state actor or a private party acting under color of state law." Marrero v. City of New York, No. 02-CV-6634, 2003 WL 1621921, at *4 (S.D.N.Y. Mar. 28, 2003). However, "[l]abor unions . . . generally are not state actors." Ciambrello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002); see Marrero, 2003 WL 1621921, at *4 ("Labor Unions generally are not state actors. Nor does Local 74's representation of public employees make it a state actor."). Because Plaintiff does not suggest otherwise, she has failed to allege that Davis is a state actor, and the § 1983 claims against him are dismissed.

#### 2. *Equal Protection Clause Claims*

Plaintiff's equal protection claims are based on the same conduct that gave rise to her Title VII and HRL discrimination claims. E.g., PAC ¶ 59. The Municipal Defendants argue that Plaintiff's equal protection claims should fail because she fails to establish municipal liability.

Municipal Defs.' Mem. at 4–6. The Individual Defendants argue that the claims should fail because Plaintiff fails to allege the personal involvement of any individual defendant besides Kelahan, and because she does not adequately allege that Kelahan treated similarly situated men more favorably than he treated Plaintiff. Individual Defs.' Mem. at 2–3.

### a.  Claims against Municipal Defendants

"In order to state a claim pursuant to . . . § 1983, a plaintiff must allege that (1) 'some person has deprived him of a federal right,' and (2) 'the person who has deprived him of that right acted under color of state . . . law.'" Riviere v. Collins, No. 10-CV-548, 2010 WL 3323801, at *1 (N.D.N.Y. May 28, 2010) (second alteration in original) (quoting Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated" a federal right. Iqbal, 556 U.S. at 676.

A municipality is only liable under § 1983 if the deprivation of a plaintiff's constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658 (1978)). A plaintiff may show the existence of a municipal policy or custom by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

<u>McLennan v. City of New York</u>, 171 F. Supp. 3d 69, 94 (S.D.N.Y. 2016).

The PAC does little more than recite the different bases for municipal liability. Plaintiff states:

> With respect to the named municipal defendants, the actions and omissions as aforementioned constitute municipal policy since they are the actions and omissions of final policymaking officials of the Oriskany Central School District. In addition, said municipal Defendants created, maintained and/or fostered a custom, policy or practice of discrimination thereby causing Plaintiff injury and harm. Finally, said municipal Defendants failed to adequately train officers and supervisors on the rights of employees to be free from discrimination and retaliation.

PAC ¶ 38. Plaintiff offers no factual allegations to support any of these conclusions. The Municipal Defendants observe that Plaintiff's municipal liability claim is pleaded in a wholly conclusory fashion, Municipal Defs.' Mem. at 4, and Plaintiff does not dispute this characterization, Municipal Defs.' Resp. at 3. Instead, she states that "[s]pecific facts are not necessary" for a claim to survive a motion to dismiss, and chastises the Municipal Defendants for "inject[ing] an evidentiary standard" into the Court's evaluation of the pleading. Municipal Defs.' Resp. at 3–4.

However, Plaintiff is mistaken. "Even at the motion-to-dismiss stage, a plaintiff cannot merely assert the existence of a municipal policy or custom in conclusory terms, but rather 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" <u>Benacquista v. Spratt</u>, 217 F. Supp. 3d 588, 600 (N.D.N.Y. 2016) (quoting <u>Santos v. New York City</u>, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012))); <u>see</u> <u>McLennon v. City of New York</u>, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) ("Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not

'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" (quoting Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 301–02 (S.D.N.Y. 2015))). Because Plaintiff offers nothing beyond a boilerplate recitation of the theories of municipal liability in support of her equal protection claims against the Municipal Defendants, these claims are dismissed.

b.  Claims Against Individual Defendants

i.  *Claim Against Kelahan*

The Individual Defendants argue that Plaintiff fails to allege that Kelahan treated similarly situated men better than he treated Plaintiff. Individual Defs.' Mem. at 2–3. The Court disagrees that Plaintiff has failed to state an equal protection claim against Kelahan. The Second Circuit has observed that equal protection claims based on gender discrimination brought by "public employees" are analyzed identically to Title VII discrimination claims. Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006); see also Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) ("Feingold's equal protection claim parallels his Title VII claim. The elements of one are generally the same as the elements of the other and the two must stand or fall together.").

As stated above, a plaintiff alleging Title VII discrimination—and, thus, a plaintiff alleging employment discrimination in violation of the Equal Protection Clause—need only allege facts that "suggest[] an inference of discriminatory motivation" by the employer. Vega, 801 F.3d at 85 (quoting Littlejohn, 795 F.3d at 310). While a plaintiff *may* satisfy this requirement by pleading the existence of favorably treated, similarly situated individuals outside of the plaintiff's protected class, this is not necessary. For instance, the requirement may also be satisfied by allegations that the supervisor accused of discrimination made statements indicative of bias against the plaintiff's protected class. See, e.g., Conforti v. Sunbelt Rentals, Inc., 201 F.

24

Supp. 3d 278, 299 (E.D.N.Y. 2016) (noting that allegations that supervisors "made comments . . . that suggested that they were biased against female employees" were "sufficient to satisfy the minimal pleading burden for discrimination claims at the motion to dismiss stage"); Yang v. Dep't of Educ. of the City of N.Y., No. 14-CV-7037, 2016 WL 4028131, at *7–8 (E.D.N.Y. July 26, 2016) (finding that the plaintiff sufficiently alleged discriminatory motivation for her Title VII claim because she "clearly allege[d] that [her] immediate supervisor made remarks that could be viewed as reflecting animus against Plaintiff on account of her national origin").

As discussed above, Plaintiff alleges that Kelahan told her on multiple occasions that her role as a mother was a "distraction" and once remarked, "That's why I hate working with women, they're always so emotional." PAC ¶¶ 9, 13. These statements raise a plausible inference that Kelahan was biased against Plaintiff because of her gender. Because Plaintiff has sufficiently alleged the existence of Kelahan's discriminatory motivation and because the Individual Defendants do not suggest that Plaintiff has otherwise failed to state an equal protection claim against Kelahan, this claim survives dismissal.

### ii.  Claims Against the Defendant Board Members

The Individual Defendants maintain that Plaintiff fails to allege the personal involvement of any individual defendant other than Kelahan, and that her equal protection claim against the other defendants should therefore be dismissed. Individual Defs.' Mem. at 2–3. A plaintiff can plead a defendant's personal involvement in a constitutional violation by alleging that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the

25

> defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Colon v Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff states that Kelahan's recommendation to terminate her employment "was adopted by the current . . . Board members . . . over Plaintiff's objection." Id. ¶ 3.

The Court is unwilling to impose liability on the Board member defendants in the absence of allegations supporting the applicability of one of the Colon factors simply because they adopted Kelahan's allegedly biased recommendation. While, as discussed above, the "cat's paw" theory of liability has been applied in Title VII discrimination cases, "[t]he Second Circuit has not held that the cat's paw theory applies in the context of a § 1983 claim." Kregler v. City of New York, 987 F. Supp. 2d 357, 366 (S.D.N.Y. 2013). Moreover, "other courts in this Circuit have declined to apply a cat's paw theory to claims arising under Section 1983." Nicosia v. Town of Hempstead, No. 16-CV-1176, 2017 WL 3769246, at *4 (E.D.N.Y. Aug. 28, 2017) (collecting cases). While "several Circuits have either held or assumed that cat's paw liability would be available under § 1983," Nagle v. Marron, 663 F.3d 100, 118 (2d Cir. 2011), the Court is unwilling to apply this theory of liability because of the unsettled state of the law and because the parties did not even consider this legal issue, see Nicosia, 2017 WL 3769246, at *4 ("As Plaintiff has failed to identify any controlling case law within the Second Circuit applying the cat's paw theory of liability to a claim arising under Section 1983, the Court declines to do so here.").

26

Other than the Board's adoption of Kelahan's allegedly biased recommendation, Plaintiff fails to provide any well-pleaded allegations regarding the conduct of the Board members that would indicate their personal involvement. The only allegations she presents regarding the Board members' conduct are vague and conclusory. E.g., PAC ¶ 12 ("Defendants negligently and/or with reckless disregard to Plaintiff's rights acted both individually and in concert to facilitate the termination of the Plaintiff."); 20 ("The acts of the Defendants are such that they had both actual and constructive knowledge of the misconduct of Gregory Kelehan [sic]."); 21 ("At all times mentioned in this Complaint, Defendants acted both individually and/or jointly and in concert with each other."). None of these allegations provide a hint as to what, if anything, the Board members actually did to Plaintiff. Nor do they furnish a basis for liability under any of the Colon factors. Therefore, Plaintiff fails to allege their personal involvement, and her equal protection claims against the Board members are dismissed.

### 3. First Amendment Retaliation Claims

Plaintiff's First Amendment retaliation claims are identical to their Title VII and HRL counterparts. PAC ¶¶ 40–43. The state has a greater interest in regulating the speech of its employees than "the speech of the citizenry in general." Lynch v. Ackley, 811 F.3d 569, 577 (2d Cir. 2016). "[A] citizen, upon entering government service, by necessity must accept certain limitations on their freedom." Id. Therefore, "speech about *personal* matters, as opposed to 'matters of public concern,' is not protected from retaliation." Id. at 578 (quoting Connick v. Myers, 461 U.S. 138 (1983)). Defendants argue that Plaintiff's complaints to the Board were not protected from retaliation because the complaints were not matters of public concern. Individual Defs.' Mem. at 3; Municipal Defs.' Mem. at 6. The Court agrees with Defendants.

27

Plaintiff, a former principal, made a complaint as a public employee. Even assuming that Plaintiff complained to the Board about Kelahan's alleged gender discrimination—which, as discussed above, she failed to plead—her complaint concerned Kelahan's alleged violation of *her* rights. While complaints "concern[ing] discrimination problems generally" are matters of public concern, complaints "limited to instances affecting only" the plaintiff are not. Cotarelo v. Vill. of Sleepy Holly Police Dep't, 460 F.3d 247, 252 (2d Cir. 2006)); cf. Hagan v. City of New York, 39 F. Supp. 3d 481, 507 (S.D.N.Y. 2014) (stating that a discrimination complaint can "address a matter of public concern . . . if it addresses a widespread policy and asserts the rights of others similarly affected"). Because Plaintiff has failed to allege that she complained about a matter of public concern, the Court dismisses her First Amendment retaliation claims.

**E. Tort Law Claims**

Plaintiff alleges that Defendants committed an array of torts against her: (1) intentional infliction of emotional distress, (2) defamation, (3) tortious interference, and (4) prima facie tort. PAC ¶¶ 44–58. The Court addresses these claims below and finds that none survive dismissal.

*1. Intentional Infliction of Emotional Distress*

Plaintiff supports her intentional infliction of emotional distress claim only by asserting that "Defendants engaged in extreme and outrageous conduct. . . . Defendants intended to cause Plaintiff severe emotional distress. . . . As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress." PAC ¶¶ 49–51. Defendants argue that the conduct alleged in the PAC is insufficiently "extreme and outrageous" to state an intentional infliction of emotional distress claim. Individual Defs.' Mem. at 4–5; Municipal Defs.' Mem. at 10–11.

28

The Court agrees with Defendants. Intentional infliction of emotional distress claims in New York "must satisfy an 'exceedingly high legal standard.'" DiRuzza v. Lanza, 685 F. App'x 34, 36 (2d Cir. 2017) (summary order). Moreover, "a party alleging [this tort] must plead and prove conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, [so as] to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. at 37 (quoting Chanko v. Am. Broad. Cos. Inc., 49 N.E.3d 1171, 1179 (N.Y. 2016)). "Actions 'likely [to] be considered reprehensible by most people' are not sufficient." Id. (quoting Chanko, 49 N.E.3d at 1179).

None of Plaintiff's allegations regarding Kelahan's conduct satisfy this demanding standard. Kelahan yelling at Plaintiff, PAC ¶ 10, is insufficient, e.g., DiRuzza, 685 F. App'x at 37 (holding that the plaintiff's allegation that the defendant "repeatedly confronted him in a loud and threatening manner" was insufficiently "extreme" for an intentional infliction of emotional distress claim). The allegations that Kelahan visited Plaintiff's building frequently, "sought ways to pit staff one against another" to "undermine[]" Plaintiff, and made impolite remarks regarding her gender and her role as a mother, PAC ¶¶ 9, 11, "no matter how upsetting, are insufficient to constitute the tort of intentional infliction of emotional distress," DiRuzza, 685 F. App'x at 37 (quoting Owen v. Leventritt, 571 N.Y.S.2d 25, 25–26 (App. Div. 1991)); Kirwin v. N.Y. State Office of Mental Health, 665 F. Supp. 1034, 1040 (E.D.N.Y. 1987) (finding that the plaintiff's allegations that "she was ostracized and isolated from . . . staff . . . that defendants engaged in a veritable campaign of harassment against her," and that she was "falsely accused of time abuse . . . and given unjustifiably poor evaluations" did not satisfy the extreme and outrageous requirement).

As to the allegation that Kelahan threw papers at Plaintiff, even if this was disturbing or violent, the tort of intentional infliction of emotional distress is "to be invoked only as a last resort, when traditional tort remedies are unavailable." Naccarato v. Scarselli, 124 F. Supp. 2d 36, 44 (N.D.N.Y. 2000) (quotation marks omitted). The paper throwing incident "was actionable under state law as a battery," and therefore could not serve as the basis for an intentional infliction of emotional distress claim. Salmon v. Blesser, 802 F.3d 249, 256 (2d Cir. 2015); see also Bower v. City of Lockport, N.Y.S.2d 621, 625 (App. Div. 2014) ("The elements of battery are bodily contact, made with intent, and offensive in nature.").

Finally, even if Plaintiff was terminated for discriminatory reasons, this would not rise to the level of extreme and outrageous conduct. "New York Courts are reluctant to allow [intentional infliction of emotional distress] claims in employment discrimination cases. The courts are wary of allowing plaintiffs to recharacterize claims for wrongful or abusive discharge . . . as claims for intentional infliction of emotional distress." Semper v. N.Y. Methodist Hosp., 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011) (quoting Stevens v. New York, 691 F. Supp. 2d 392, 399 (S.D.N.Y. 2009)). Moreover, "courts within this circuit generally have found allegations of discrimination [and] wrongful termination . . . insufficient to satisfy the rigorous standard for extreme and outrageous conduct." Gioia v. Forbes Media, LLC, No. 09-CV-6114, 2011 WL 4549607, at *12 (S.D.N.Y. Sept. 30, 2011); see Lydeatte v. Bronx Overall Econ. Dev. Corp., No. 00-CV-5433, 2001 WL 180055, at *2 (S.D.N.Y. Feb. 22, 2001) (holding that allegations "that defendant was biased against [the plaintiff] based on her race, that she was harassed and treated poorly on the job . . . until she was ultimately wrongfully terminated, . . . even if done maliciously," did not satisfy the extreme and outrageous

requirement). Accordingly, Plaintiff has failed to allege that Defendants' conduct was extreme and outrageous, and the Court dismisses her intentional infliction of emotional distress claims.

### 2.    Defamation

In the PAC, under the header for Plaintiff's defamation cause of action, she simply alleges that "Defendants communicated untrue statements about Plaintiff." PAC ¶ 45. The Municipal Defendants correctly observe that this claim is too sparsely pled to survive dismissal. Municipal Defs.' Mem. at 9–10. "To state a claim for defamation under New York law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault . . . on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010). "Even under the liberal pleading standards of" Rule 8 of the Federal Rules of Civil Procedure, "a pleading is sufficient only if it 'adequately identifies the purported communication, and an indication of who made the statement, when it was made, and to whom it was communicated.'" M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 223 (E.D.N.Y. 2010) (quoting Amar v. Hillcrest Jewish Ctr., No. 05-CV-3290, 2009 WL 891795, at *7 (E.D.N.Y. Mar. 31, 2009)). Plaintiff states that she "is not required to plead with such specificity," Municipal Defs.' Resp. at 10, but cites no authority for this proposition.

The PAC does not mention which statements are meant to support Plaintiff's defamation claim. In her Response to the Municipal Defendants' Motion, Plaintiff supports her claim by observing that her pleading "asserts that Defendant Kelehan [sic] falsely represented statements and actions of the Plaintiff as well as 'falsely manufactured and exaggerated bases for

[Plaintiff's] termination." Id. However, Plaintiff never identifies what Kelahan allegedly said, when these statements were made, or the recipient of these statements. The PAC also alleges that Kelahan falsely told Plaintiff's "secretary that she 'wanted to fire her.'" PAC ¶ 11. While this identifies the statement, the speaker, and the recipient, it still fails to mention the date of the communication. "As such, [Defendants are] deprived of an opportunity to defend [themselves] because [they are] left to guess whether, for example, the statute of limitations may bar the alleged statements." M.V.B. Collision, Inc., 728 F. Supp. 2d at 223. Accordingly, the Court dismisses Plaintiff's defamation claims.

### 3. Tortious Interference With Employment

In the PAC, under the header for Plaintiff's tortious interference with employment cause of action, she alleges only that, "By their aforementioned actions and omissions, Defendants intentionally interfered with Plaintiff's employment with the Oriskany Central School District." PAC ¶ 53. "Under New York law, the elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a "third party" had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001) (quoting Finley v. Giacobbe, 79 F.3d 1285, 1294 (2d Cir. 1996)). A plaintiff alleging a tortious interference with employment claim cannot bring a claim against her employer because they are parties to the contract, and cannot bring a claim against "individual defendants, as agents of the [employer], absent a showing that they acted outside the scope of their authority." Cohen v. Davis, 926 F. Supp. 399, 404 (S.D.N.Y. 1996). "A supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved

independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest." Id. (citing Murtha v. Yonkers Child Care Ass'n, Inc., 383 N.E.2d 865, 866 (N.Y. 1978)).

Turning to the tortious interference claims against the Individual Defendants, these defendants were employees of the Municipal Defendants. Therefore, Plaintiff must show that they acted outside the scope of their employment to state a tortious interference claim against them. Plaintiff asserts in her Response to the Individual Defendants' Motion that Kelahan interfered with her employment using "fraud" and "misrepresentation," Individual Defs.' Resp. at 8, but wholly fails to develop these claims. The PAC alleges that Kelahan "falsely manufactured and exaggerated bases for [Plaintiff's] termination" when recommending her termination to the Board, PAC ¶ 10, but does not clarify what he actually said. To allege that a defendant has committed fraudulent misrepresentation, a plaintiff must, at the very least, allege "a [false] representation of material fact." McBeth v. Porges, 171 F. Supp. 3d 216, 225 (S.D.N.Y. 2016) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006)). Plaintiff fails to identify any fact that Kelahan represented to the Board, let alone how it was false. Accordingly, she fails to establish that he committed an independent tort. Finally, Plaintiff does not even suggest that Kelahan acted "purely from malice or self-interest." Cohen, 926 F. Supp. at 40. Therefore, her tortious interference claim against Kelahan fails.

The tortious interference claims against the other individual defendants are equally defective. Plaintiff only alleges that the Board members adopted Kelahan's recommendation to terminate her employment. This does not suggest that they committed independent torts or acted

purely out of malice. Therefore, the tortious interference claims against the Individual

Defendants are dismissed.

Turning to the tortious interference claims against the Municipal Defendants, these

defendants were Plaintiff's employers, PAC ¶ 2, and therefore were not third parties to her

employment contract. Accordingly, her tortious interference claims against the Municipal

Defendants is dismissed. See Albert, 239 F.3d at 274 (finding that the plaintiff could not bring a

claim against her employer "because it is a party to the alleged employment contract" (alterations

and quotation marks omitted).

### 4. Prima Facie Tort

Prima facie tort claims are "highly disfavored in New York." Nevin v. Citibank, N.A.,

107 F. Supp. 2d 333, 347 (S.D.N.Y. 2000). To state a prima facie tort claim under New York

law, a plaintiff must allege: "(1) intentional infliction of harm, (2) causing special damages, (3)

without excuse or justification, and (4) by an act or series of acts that would otherwise be

lawful." Katz v. Travelers, 241 F. Supp. 397, 405 (E.D.N.Y. 2017) (citing Restis v. Am. Coal

Against Nuclear Iran, Inc., 53 Supp. 3d 705, 730 (S.D.N.Y. 2014)). "The first element requires

disinterested malevolence, which means that the plaintiff cannot recover unless the defendant's

conduct was not only harmful, but done with the sole intent to harm." Id. (quoting Hall v. City of

White Plains, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002) (quotation marks omitted)).

Plaintiff's prima facie tort claim cannot survive dismissal. The PAC does little more than

recite the elements of a prima facie tort. PAC ¶¶ 55–58 ("Defendants intended to inflict harm

upon the pecuniary interests of the Plaintiff. . . . Defendants had no justification or

excuse. . . . The aforesaid acts and/or omissions of Defendants were intended to cause harm and

injury to the Plaintiff."). While Plaintiff alleges that Defendants "intended to cause harm and injury to Plaintiff," PAC ¶ 58, she never alleges that any defendant committed harmful conduct "done with the sole intent to harm," see Fordham v. Islip Union Free Sch. Dist., 662 F. Supp. 2d 261, 277 (E.D.N.Y. 2009) ("Where the plaintiff merely pleads intentional and malicious action, but not that the defendant's sole motivation was disinterested malevolence, the [prima facie claim] will be dismissed." (quoting T.S. Haulers, Inc. v. Town of Riverhead, 190 F. Supp. 2d 455, 465 (E.D.N.Y. 2002))). Moreover, even if the Court were to assume that Kelahan's conduct satisfied the disinterested malevolence requirement, Plaintiff alleges that he discriminated against her on the basis of gender. Gender discrimination is not an "act[] that would otherwise be lawful." Katz, 241 F. Supp. at 405. See Chen v. United States, 854 F.2d 622, 629 (2d Cir. 1988) (affirming dismissal of prima facie tort claim because "racial harassment [does not] . . . constitute[] conduct that is otherwise lawful").

### F. Amendment Motion

Rule 15 of the Federal Rules of Civil Procedure allows a plaintiff to amend her complaint more than twenty-one days after service of a motion to dismiss "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). A motion to amend under Rule 15(a) "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and

perhaps most important, the resulting prejudice to the opposing party." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 603–04 (2d Cir. 2005) (quoting Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987)).

The Municipal Defendants argue that Plaintiff's Amendment Motion should be denied on futility grounds because the changes proposed in the PAC do not address the purported deficiencies in their Motion. Municipal Defs.' Reply at 1. "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." Cowles v. Yesford, No. 99-CV-2083, 2001 WL 179928, at *3 (N.D.N.Y. Feb. 22, 2001) (quoting Chan v. Reno, 916 F. Supp. 1289, 1302 (S.D.N.Y. 1996)). Because the Court has determined that the PAC adequately alleges numerous claims against the Municipal and most of the Individual Defendants, Plaintiff's proposed amendments are not futile. Defendants raise no other reason why leave to amend should not be granted, and the Court is aware of none. The Court therefore finds that justice requires allowing Plaintiff to amend her Complaint.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Clerk of the Court amend the caption of this case to change the spelling of "Kelehan" to "Kelahan"; and it is further

**ORDERED**, that Plaintiff's Amendment Motion (Dkt. No. 22) is **GRANTED**; and it is further

ORDERED, that Plaintiff file the Proposed Amended Complaint (Dkt. No. 22-2) within fourteen days of the filing of this Memorandum-Decision and Order. The claims dismissed by this Memorandum-Decision and Order shall remain dismissed; and it is further

ORDERED, that the Municipal Defendants' Motion (Dkt. No. 16) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as to Plaintiff's retaliation claims under Title VII and the HRL, her § 1983 equal protection and First Amendment claims, and her defamation, intentional infliction of emotional distress, tortious interference, and prima facie tort claims; and it is further

ORDERED, that the Individual Defendants' Motion (Dkt. No. 43) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as to Plaintiff's Title VII claims, her HRL retaliation claims, her HRL hostile work environment and discrimination claims raised against Mike Davis, her § 1983 equal protection claims against every individual defendant other than Greg Kelahan, her § 1983 First Amendment claims against all Individual Defendants, and her defamation, intentional infliction of emotional distress, tortious interference, and prima facie tort claims against all Individual Defendants; and it is further

ORDERED, that Plaintiff's claims against defendant Shirley Burtch are **DISMISSED without prejudice** for failure of service; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     April 26, 2018
              Albany, New York

Lawrence E. Kahn
U.S. District Judge