UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LISA KRAUSE,

                              Plaintiff,

        -v-                                6:17-CV-1045

GREG KELAHAN, Superintendent,
Oriskany Central School District;
ORISKANY CENTRAL SCHOOL
DISTRICT; and ORISKANY CENTRAL
SCHOOL DISTRICT BOARD OF
EDUCATION,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                     OF COUNSEL:

BOSMAN LAW FIRM, LLC             AJ BOSMAN, ESQ.
Attorneys for Plaintiff          ROBERT J. STRUM, ESQ.
3000 McConnellsville Road
Blossvale, New York 13308

OFFICE OF FRANK W. MILLER        CHARLES C. SPAGNOLI, ESQ.
Attorneys for Defendants         FRANK W. MILLER
6575 Kirkville Road
East Syracuse, New York 13057

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION AND BACKGROUND

On September 20, 2017, defendants the Oriskany Central School District

(the "District"), its Board of Education (the "School Board"), and Gregory

Kelahan ("Kelahan" and together "defendants") removed a complaint filed by plaintiff Lisa Krause ("Krause" or "plaintiff") to this district.  Dkt. 1.  At bottom, plaintiff claimed that defendants discriminated against her during her employment as a principal in the Oriskany Central School District, eventually leading to her termination.  *See generally id.*, *passim*.  On May 29, 2020, the district court judge presiding over this case at the time issued a memorandum-decision and order (the "May 29 decision") granting in part and denying in part defendants' motion for summary judgment.  Dkt. 102.

The May 29 decision passed over several active claims against defendants before ultimately winnowing them down.  In a decretal paragraph, the order set out the following claims to go to trial: (1) gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") against the School Board and the District; (2) a hostile work environment under Title VII against the School Board and the District; (3) gender discrimination under the New York State Human Rights Law ("NYSHRL") against Kelahan;[1] and (4) hostile work environment under the NYSHRL against Kelahan.  pp. 54-55.[2]

However, the May 29 decision specifically noted in a footnote that Krause also had active NYSHRL claims pending against the School Board and the

---

[1] Many individual members of the School Board also remained in the case, but this Court severed the claims against these defendants to make trial more manageable in light of the COVID-19 pandemic.  Dkt. 135.

[2] Pagination corresponds with CM/ECF.

District.  *See* Dkt. 102, p. 15 n.9.  That decision never dismissed those claims. *See generally id.*, *passim*.  Nor would there be any apparent basis to dismiss them against the School Board itself when its individual members remained as defendants.  *See id.* at 54-55.  As best this Court can glean, the decretal paragraph simply erred in failing to mention the NYSHRL claims against the School Board—perhaps in part due to defendants' own failure to mention them in their motion for summary judgment.  *Id.* at 15 n.9, 54-55.

In any case, on September 29, 2021, this case was reassigned.  Dkt. 108. The Court then proceeded in short order to a jury trial, which lasted from October 18 to October 25, 2021.  On October 25, 2021, the jury returned a verdict for Krause on all counts and against all defendants in the amount of $484,456.00.  Dkt. 170, p. 5.

On November 8, 2021, defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure ("Rule") 50, a new trial under Rule 59, and/or a reduction in damages under Rule 60.  Upon review of the submissions, and after considering the parties' oral arguments, defendants' motions must be denied.

## II. <u>DISCUSSION</u>

Before getting to the merits of defendants' arguments, though, the Court first finds itself obligated to take care of some argumentative housekeeping. In that vein, the Court begins by noting that defendants made many of their

3

arguments in support of their motions through an affidavit submitted by their attorney.  But the Local Rules for the Northern District of New York expressly forbid raising arguments by affidavit.   LOCAL RULE 7.1(b)(2) (requiring that affidavit submitted with motion "must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports")

Apparently sensing the metaphorical ice cracking under their feet, defendants nevertheless tried to scamper these arguments back to more solid footing by resubmitting them verbatim in their reply brief.  Yet that mechanism fares no better; that parties may not introduce arguments for the first time in reply is beyond well-established.  *Gonzalez v. Agway Energy Servs., LLC*, 2019 WL 910669, at *2 (N.D.N.Y. Feb. 25, 2019) (collecting cases disregarding arguments raised for first time in reply brief).

Making matters worse, whether in defendants' reply brief or in their attorney's affidavit, these arguments stacked end-to-end provide only *one* citation to any legal source.  An experienced attorney in this district should be well familiar with these basic rules.  There is no reason to excuse this failure to comply with them.  Accordingly, any arguments raised only in defendants' attorney's affidavit and reply brief will not be considered.  *See, e.g.*, *Danford v. City of Syracuse*, 2012 WL 4006240, at *3-4

4

(N.D.N.Y. Sept. 12, 2012) (refusing to consider legal arguments advanced in affidavit, especially without citations to caselaw).

In addition, defendants raise a sizeable majority of their arguments in a bulleted list of claimed errors at trial. Curiously absent from that list are any citations to the trial transcript or to any governing case law. Courts routinely deny post-trial motions when the moving party fails to support its motion with either record citations or applicable law. *See, e.g.*, *Warr v. Liberatore*, 2019 WL 3288148, at *2 (W.D.N.Y. July 22, 2019) (collecting cases denying Rule 59 motions for failure to support the motion with citations to the record, law, or both). The Court will also not consider these arguments.

## A. <u>Renewed Motion for Judgment as a Matter of Law</u>

Turning at last to the merits of defendants' properly raised arguments, the Court will begin with defendants' Rule 50 motion. To prevail on a Rule 50 motion for judgment as a matter of law after trial, the movant bears the heavy burden of proving that "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair[-]minded persons could not arrive at a verdict against [them]." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011).

5

Defendants have not carried their heavy burden.  Krause testified that defendant Kelahan complained about her office being too feminine and that plaintiff—and women writ large—are too emotional.  In addition, there was testimony at trial that Kelahan questioned plaintiff's fitness as a mother for taking the job at all.  Defendants may dismiss that testimony as self-serving, but the jury was properly instructed in how to weigh the testimony of an interested witness and apparently credited her narrative anyway.  Dkt. 168, p. 12.  That evidence all suffices to establish discriminatory animus.  It is also uncontroverted that plaintiff was fired as principal, and that that firing depended in large part on Kelahan's recommendation.

Defendants nevertheless pointed to Krause's improper modification of the Denison family's 504 plan, a debacle involving no bells to signal changes in class periods for the first day of school under plaintiff's watch, and general poor performance by plaintiff as legitimate reasons for terminating her.  But that evidence was certainly not so overwhelming that the jury's verdict must be overturned.

After all, the Denison family testified that they had no objection to Krause's alterations of their 504 plan.  Much as defendants may make about the civil liability that could follow if plaintiff had unilaterally altered allergy plans for students, there was ample evidence to suggest that it was a unique circumstance caused by the Denisons' ongoing difficulties in getting their

6

daughter a plan that worked for them.  In addition, plaintiff testified that members of the School Board were aware of her meeting with the Denisons ahead of time.  For that matter, there was also testimony that Kelahan had known about the bell debacle in advance of school starting as well.  The jury was well within its rights to use this evidence to determine that defendants' asserted reasons for firing plaintiff were pretextual.

Additionally, non-party witness Margaret Beck ("Beck") testified that Krause was showing promise as a principal and not given enough time to grow into the role before being terminated.  Considering that Kelahan hired Beck for the apparent purpose of coaching plaintiff to grow into her role, her testimony that plaintiff was cut out at the knees lent further support to the notion that plaintiff's firing was truly motivated by something other than her performance.

Although Krause's hostile work environment claim is a closer question, that claim, too, was supported by enough evidence to justify the jury's verdict. Plaintiff testified concerning repeated criticism and cutting remarks from Kelahan for the entire duration of her employment.  Although criticism on its own may not necessarily rise to the level of a hostile work environment, in this case those attacks were especially personal, including harassment concerning her fitness as a parent and a general disregard for her emotional

well-being.  The Court sees no issue with the jury finding a hostile work environment under these facts.

However, defendants do raise one argument that merits closer scrutiny. Specifically, defendants argue that the School Board and the District should not have been held liable for Kelahan's alleged misconduct because the facts of this case do not allow for "cat's paw" liability.  Although that line of argument was one of the several raised only in defendants' affidavit and reply brief, if that argument has merit it could, perhaps, amount to a fundamental error notwithstanding defendants' procedural failures.  The Court will therefore consider this argument all the same.

The cat's paw theory to which defendants refer allows for an employer to be held liable if a supervisor subjects a plaintiff to an adverse action because the supervisor has been manipulated into taking that action by a subordinate with a discriminatory motive.  *Vazquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 272 (2d Cir. 2016).  However, if the supervisor relied on information passed onto him or her in good faith and in the absence of negligence, the cat's paw theory cannot apply.  *Id.* at 275.

According to defendants, there can be no cat's paw liability here because the School Board acted in good-faith reliance on Kelahan's recommendation. But even if the Court sets to one side defendants' failure to specifically cite any record evidence in support of that good faith, that argument would still

fail.  Cat's paw liability never played a role in this case, because Kelahan's

animus could have been imputed directly to the School Board, and by

extension the District.

After all, an employer may be held directly vicariously liable for a

supervisor's misconduct with no need to resort to the cat's paw theory.  *See*

*Vance v. Ball State Univ.*, 570 U.S. 421, 428-29 (2013).  And an employee is a

supervisor if the employer has empowered him to take a tangible employment

action against the plaintiff, including "hiring, firing, failing to promote,

reassignment . . . or a decision causing a significant change in benefits."  *Id.*

at 431.

That shoe does not appear to fit Kelahan at first glance.  After all, he could

only make recommendations to the School Board; it was up to them to decide

whether to hire, fire, or discipline Krause.  However, when an employer

attempts "to confine decision[-]making power to a small number of

individuals," the employer "may be held to have effectively delegated the

power to take tangible employment actions to the employees on whose

recommendation it relies."  *Vance*, 570 U.S. at 447.  Accordingly, the

recommending employee amounts to a supervisor, and any discriminatory

animus found attributable to him can be imputed directly to the employer, no

cat's paw required.  *See id.* at 431, 447.

The rationale behind this rule is not hard to grasp.  After all, in its absence, employers would be incentivized to cabin all hiring, firing, and disciplinary decisions to a set, detached cadre of decisionmakers.  These decisionmakers could then rely on the recommendations of other employees, laundering any impermissible animus and shielding the company from any liability except where there were obvious red flags to warrant closer scrutiny into a subordinate's recommendation.  Through a simple act of corporate restructuring, anti-discrimination statutes would find themselves suddenly toothless.

These facts meet *Vance*'s standard and are supported by its rationale. There was ample evidence that the School Board deferred to Kelahan's recommendations concerning terminations, including plaintiff's.  That is precisely the sort of dynamic that the Supreme Court identified as effectively delegating supervisory authority.  *Vance*, 570 U.S. at 447.

And carrying the analogy out into a more traditional business setting, not imputing Kelahan's animus to the School Board would be tantamount to not imputing a C-level employee's animus to a corporation simply because a decision he or she makes must first pass before the board of directors. *Vance*'s delegation theory was conceived specifically to prevent that outcome. 570 U.S. at 446-47 (noting that employer that confines decision-making authority to few individuals would result in delegation in response to

argument that companies would be incentivized to limit decision-making to few individuals to prevent liability). Therefore, the Court did not err in holding that Kelahan was a supervisor and directly imputing any animus on his part to the School Board and the District. Defendants' Rule 50 motion must therefore be denied.

### B. **Motion for a New Trial**

Next, the Court turns to defendants' Rule 59 motion. Rule 59 affords a party a new trial for any reason for which a new trial had been granted before the Rules were enacted. FED. R. CIV. P. 59(a)(1)(A). One traditionally accepted basis for a new trial is an erroneous evidentiary ruling, but only when that error affects a party's substantial right. *Restivo v. Hessemann*, 846 F.3d 547, 573 (2d Cir. 2017). Another possible justification for a new trial is if an erroneous instruction gave the jury a misleading impression or inadequate understanding of the law. *Owen v. Thermatool Corp.*, 155 F.3d 137, 139 (2d Cir. 1998).

Upon review, defendants' arguments in support of a new trial must also be rejected. First, the Court sees no error in admitting the Denison family's testimony. Krause presented this testimony as evidence that defendants used her changing the Denisons' 504 plan as a pretext to justify firing her. Explaining the Denison family's prior difficulties in navigating the 504 system was necessary to explain why the Denisons were relieved—rather

11

than upset—by plaintiff's altering that plan outside of the apparent rules. That testimony also served to corroborate plaintiff's account that her meeting with the Denisons to alter their daughter's 504 plan was atypical and brought on in part by the Deninsons' difficulties in coming to an agreement with the School Board and District on a plan for their daughter.

Additionally, defendants have failed to explain why the Denisons' testimony would be prejudicial to them other than by claiming in conclusory fashion that it "inflamed the jury."  Accordingly, the Denison family's testimony was relevant, and that relevance was not so substantially outweighed by its prejudicial value, if any, as to require preclusion under Federal Rule of Evidence ("Evidence Rule") 403.

Second, defendants have failed to explain why any conflation of a 504 plan with an IEP would have caused them prejudice.  Krause's argument was that relying on the 504 plan to fire plaintiff was pretext and the true motive was gender discrimination.  Whether defendants' reliance on the 504 plan to justify plaintiff's firing was legitimate or pretext was a question for the jury. Defendants were permitted to argue that law and policy would have allowed for plaintiff to be fired for her interference with the Denisons' 504 plan. Conversely, plaintiff was permitted to argue that even if that was the policy on paper, it was a policy that defendants usually did not follow.  Any off-hand

conflation of a 504 plan and an IEP would not have altered the jury's consideration of which story to believe.

Third, defendants argue that Krause was improperly permitted to introduce hearsay evidence from other players in the Oriskany School District that Kelahan treated her more harshly than male principals.  Of course, hearsay is a statement made out of court that a party offers in evidence to prove the truth of the matter asserted in the statement. FED. R. EVID. 801(c).  There are no shortage of exceptions to the hearsay rule, but among that multitude a statement made by an "agent or employee [of a party opponent] on . . . matter[s] within the scope of that relationship and while it existed" is not hearsay.  FED. R. EVID. 801(d)(2)(D).

As defendants would have it, that exception is limited to including an agent's comments specifically related to their duties.  But the rule is not quite so narrow as that.  Instead, Evidence Rule 801 does not consider statements by any "significant participant in [a] decision-making process" to be hearsay so long as they were discussing that decision-making process.  *United States v. Rioux*, 97 F.3d 648, 661 (2d Cir. 1996).

As far as the Court can tell, and without any specific examples from defendants to guide the inquiry, there are three readily apparent categories of out-of-court statements based on how the evidence came in.

The first batch involves out-of-court statements by members of the School Board or Kelahan.  For these statements to be relevant, they must have either dealt with Kelahan's interactions with Krause or the decision to terminate her as principal.  In either case, those statements would have been made by significant participants in the decision-making process of firing plaintiff and would be admissible under Evidence Rule 801(d)(2)(D).  *See Rioux*, 97 F.3d at 661 (ruling that statements by significant participants in decision-making process for party opponent are not hearsay if made concerning decision-making process).

The second possible group of out-of-court statements are those made by other District employees concerning Krause's competence, or especially its lack.  These statements are also not hearsay to the extent that plaintiff sought to admit them, because plaintiff introduced them as evidence of Kelahan's efforts to poison the well by speaking ill of plaintiff to her coworkers.  FED. R. EVID. 801(c).  In other words, any negative comments about plaintiff's performance were not introduced for their truth and were not hearsay.

The third group—statements made by non-board-members concerning Kelahan's treatment of Krause—would, potentially, have been hearsay.  Even then, though, the possibility certainly exists that another hearsay exception

would have rendered any one of this hypothetical set of statements admissible.

But of course, the Court cannot possibly determine whether an objection to the hearsay rule would apply when defendants have not identified any singular statements subject to an objection for the Court to examine.  All told, it is safe to say that broad swaths of the out-of-court statements that defendants could be objecting to would not qualify as hearsay.  For the rest, defendants' failure to cite to specific instances with support from the transcript makes it impossible for the Court to meaningfully assess whether there was an error or not.  Put together, defendants' motion must be denied to the extent that it relies on purported hearsay.

Fourth, defendants' outcry about not being permitted to ask questions about the performance of past male principals in the Oriskany Central School District is similarly unjustified.  As Krause correctly notes, defendants tried to introduce this evidence through leading questions that improperly assumed that plaintiff engaged in misconduct.  There was no error in excluding those questions or their answers based on the improper form.

To the extent that there were other instances in which defendants tried to introduce this evidence properly and were rebuffed, the Court is once again under no obligation to produce the record on its own and comb through it looking for evidentiary objections that disfavored defendants.  Defendants'

15

failure to identify any specific instances of improperly granted objections and to append citations to the record still precludes relief.  *See, e.g.*, *Warr*, 2019 WL 3288148, at *2.

Fifth, no claims were improperly added to the case after the close of proof. Although the memorandum-decision and order on summary judgment may not have been entirely clear, Krause's NYSHRL claims against the School Board and the District were never dismissed.  Dkt. 102, pp. 15 n.9, 54-55. Plaintiff therefore would have been prejudiced had her claims been baselessly treated as dismissed at trial.

Conversely, defendants suffered no prejudice by having these claims go to the jury because the proof for Krause's NYSHRL claims was identical to the proof for her claims under Title VII.  *See, e.g.*, *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (noting that NYSHRL claims are generally analytically identical to Title VII claims).  This final basis for defendants' Rule 59 motion must be denied, as must that motion in its entirety.

## C. **Motion to Alter Judgment**

Finally, the Court turns to defendants' motion to reduce the jury's damages award.

From the outset, it is unclear at this juncture whether courts considering challenges to a damages award for both state and federal claims should apply

the state or federal remittitur standard. *Restivo*, 846 F.3d at 587. And one can certainly imagine a set of circumstances where that distinction would matter. After all, the federal standard is demanding, and only permits a jury's award to be set aside "if it is so high as to shock the judicial conscience and constitute a denial of justice." *Id.* (internal citations omitted). By contrast, under New York law, a damages award can be altered if it "deviates materially from what would be reasonable compensation." *Id.* (internal citations omitted). In either case, though, courts prefer to leave the assessment of a proper measure of damages to the jury. *Id.* at 587.

Defendants make four arguments for a reduction or elimination of damages: (1) Krause promptly found new employment, suggesting that the damages award was too high; (2) the $150,000 in emotional distress exceeded comparable cases in New York State; (3) the Court improperly admitted an exhibit detailing plaintiff's lost earnings that the jury relied on in assessing damages; and (4) the May 29 decision's dismissal of plaintiff's claims under 42 U.S.C. § 1983 ("§ 1983") means that the same decision defense applies as a matter of law and plaintiff cannot recover damages.

First, the jury was instructed that it should only consider damages based on the actual harm she suffered. Dkt. 168, p. 31. The Court must therefore assume that it took that charge seriously in assessing an appropriate compensatory award. *See LNC Invs., Inc. v. Nat'l Westminster Bank, N.J.,*

17

308 F.3d 169, 177 n.10 (2d Cir. 2002) ("Juries are presumed to follow their instructions." (cleaned up)).  Especially because defendants have failed to specifically articulate how much Krause's second job would have reduced the damages award, this argument must be rejected.

Second, if a $150,000 award for emotional distress is truly out of line under New York's standard for damages, defendants surely could have pointed the Court toward some case law—any case law—to support that notion.  Defendants did not.  The Court will not scour New York opinions to determine the validity of a claim that the burden was on defendants to support, especially not when a jury's award should generally not be disturbed.  *Restivo*, 846 F.3d at 587.

In any case, there was ample evidence that Krause suffered substantial emotional distress for one-and-a-half years.  $150,000 does not strike the Court as gratuitous compared with that evidence.  The award neither shocks the conscience, nor is it a material deviation from reasonable compensation. This argument must also be rejected.

Third, defendants' argument that the Court admitted an exhibit despite recognizing that its foundation was lacking is also unavailing.  Although Krause agrees that the Court initially found her foundation for the exhibit in question wanting, to her counsel's recollection, she then asked more questions to bolster its legitimacy.  As plaintiff tells it, only then did the

Court admit it into evidence.  If the Court had the transcript to review, it could have settled these competing narratives easily.  But defendants' failure to back up any of their claims with evidentiary support continues to haunt them.  The Court will not take the extraordinary step of disturbing a jury's damages award based on conflicting, equally unsupported narratives from the parties.  *Restivo*, 846 F.3d at 587.

Fourth, defendants' arguments concerning the mixed motive defense are also fatally flawed.  To be sure, defendants are correct that under § 1983, a plaintiff claiming discrimination must prove that discrimination was a but-for cause of an adverse employment action.  *Naumovsky v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019).  And they are also correct that if a defendant proves that discrimination was not a but-for cause of its decision to subject plaintiff to an adverse employment action, that plaintiff cannot recover damages.  *Natofsky v. City of N.Y.*, 921 F.3d 337, 347 (2d Cir. 2019).

But where defendants go astray is in arguing that the May 29 decision's dismissal of Krause's § 1983 discrimination claims requires that the same decision defense apply in this case.  That argument fails to account for the stark differences between a plaintiff's § 1983 claim at summary judgment on the one hand and the same decision affirmative defense at trial on the other.

That failure means that defendants' argument as a whole falls apart for two key structural reasons.  The first is that it "glosses over an essential

19

component of the verdict: the burden of proof." *Perez v. Cnty. of Rensselaer*, 2020 WL 1140508, at *2 (N.D.N.Y. Mar. 9, 2020).  It was not unreasonable for the May 29 decision to come to the conclusion that no reasonable jury could determine based on the record at summary judgment that Krause had proven that gender was the but-for cause of her termination.  Dkt. 102, p. 42.  But that holding does not necessarily mean that defendants met their own affirmative burden of proof that they *would* have—not simply that they *could* have—fired plaintiff regardless of any discriminatory animus imputable to the School Board through Kelahan.

The second failure is the difference in procedural posture.  Unlike a cold summary judgment record, where credibility determinations are forbidden and evidence must be taken at face value, *see Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017), at trial determining the weight of evidence and the credibility of the witnesses is the entire purpose of empaneling a jury, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  For the reasons discussed above in denying defendants' Rule 50 motion, defendants' proof for the same decision defense was not so overwhelming that the Court felt that it could take that question from the jury.  *See id.*

Instead, as defendants requested, the Court instructed the jury on the same decision defense.  Dkt. 168, p. 24.  Once again, the Court must assume that a properly instructed jury will follow its instructions.  *LNC Invs.*,

20

308 F.3d at 177 n.10.  Thus, the jury apparently flatly rejected the same decision defense when confronted with it.

Of course, one can imagine an edge case where the evidence supporting the same decision defense was so overwhelming that its verdict was plainly unreasonable and a damages award would have to be overturned.  *See Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634 (2d Cir. 2002) (noting that jury verdict may be set aside if "seriously erroneous" or "miscarriage of justice" based on trial judge's own weighing of the evidence).

But that case is not this one.  In addition to Krause's own affirmative evidence, Kelahan and members of the School Board testified as to their experiences with plaintiff, their opinions of her, and the process that led to her termination.  The jury properly weighed their explanations for the decision to fire plaintiff and found their credibility wanting.  The Court will not disturb that ruling now.[3]

In other words, defendants want the Court to overturn damages awarded by a properly instructed jury because one of Krause's claims involving similar evidence failed at a different procedural posture.  That request must be denied.  The jury's verdict must stand.

---

[3] In fact, the Court is doing defendants a considerable favor in even considering that argument despite its being one of the several they raised improperly through an attorney affidavit and a reply brief.

III. **CONCLUSION**

After careful review, defendants' volley of arguments for overturning the verdict in Krause's favor misses the mark, especially those among them that were misfired.  The jury's verdict in this case must not be disturbed.

Accordingly, plaintiff, as a prevailing party in a Title VII claim, may move for attorney's fees and expenses no later than Monday, December 27, 2021.  Defendants may respond in opposition no later than Monday, January 10, 2022.  If the Court deems fees and expenses to be appropriate, the judgment will be amended accordingly.  Finally, defendants' motion to stay enforcement of the judgment or amended judgment pending appeal will be granted.

Therefore, it is

ORDERED that

1. Defendants' motions for judgment as a matter of law, a new trial, and to alter the judgment are DENIED;

2. Plaintiff Lisa Krause may move for attorney's fees and expenses no later than Monday, December 27, 2021;

3. Defendants may respond in opposition to plaintiff Lisa Krause's fee and expense request no later than Monday, January 10, 2022;

4. No replies will be permitted; and

5. Plaintiff Lisa Krause is stayed from enforcing the judgment or
amended judgment provided that defendants post a $600,000
superseding bond no later than Monday, January 31, 2022.

IT IS SO ORDERED.


Dated:  December 13, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge